### Dierolff vs. Winterfield.*

PRACTICE: (1.) *New trial for newly discovered evidence.* (2.) *Motion for rehearing ; effect of failure to comply with rule of court.*

1. After verdict against the defendant, new evidence having been discovered of substantive facts having an important bearing on the issue, and as to which defendant had not offered any direct evidence at the trial, it was error to refuse a new trial.
2. Where the arguments in support of a motion for a rehearing are not filed within twenty days, as required by the rule, such motion fails for want of prosecution ; and no motion to dismiss it is required.

APPEAL from the Circuit Court for *Milwaukee* County.

This action was brought by *Mrs. Dierolff*, in 1868, 1. Upon a promissory note for $600, with interest at seven per cent., alleged to have been given by defendant to plaintiff, for moneys loaned by her to him, May 23d, 1865. 2. For $858 alleged to be due for food, attendance, washing and other necessaries furnished by plaintiff to defendant at his request. 3. For $395 alleged to have been loaned by plaintiff to defendant at various times during the three years preceding the commencement of the suit. 4. For $118 alleged to be due for washing and lodging furnished by plaintiff to one of defendant's employees, and for

---

* The relations of the parties to this action are shown in part by the report in the case of *Winterfield v. Stauss*, 24 Wis. 394,    REP,

clothing furnished to defendant's wife at his request, etc. The answer contained a general denial. No evidence was offered at the trial in support of the second or fourth causes of action. The plaintiff testified that the note sued upon had been stolen from her and destroyed by the defendant, and that the $600 for which said note had been given, was money which was collected for her from friends in Chicago, at the time of the death (by drowning) of one Wolf, her first husband, about seven years before the commencement of the action. Being asked if she knew the persons who brought her the money, she answered that she knew one, a man named Hesse, and that she got from him "sixty dollars, or a little more." One Elizabeth Beeler testified that she was living with the plaintiff at the time of the alleged making of the note in question ; that she was present when plaintiff loaned the defendant $600 ; that she saw the note and had it in her hands about a week after the loan was made, and also saw it in 1867 ; that she also saw plaintiff count out $300 and take it away, saying that she would give it to defendant, and that defendant the same evening acknowledged to witness that he had received the money. She further testified, that when she first went to live with plaintiff, the latter had more than $1,000 in cash ; that the money was in small bags, and kept in a bed occupied by plaintiff and the witness ; that there was $600 in one bag, and $300 in another. One Emil Dierolff, brother of plaintiff's second husband, testified that at the time of her second marriage plaintiff "had property, and was well off. She had a complete household furniture ; everything was complete in the house at first ; she had a good many carpenter tools [property of the first husband] ; besides that, she had some money in cash ; I could not state the sum exactly, but I know she laid out several sums of money to keep us straight in our business ; I have never seen the whole of it,

but saw that she always had plenty of money; my brother and I used to farm together, at the time he got married, and we had almost all the furniture in the house for housekeeping, and she sold all we did not need—as a cooking stove, vessels for cooking, and the like; she sold some clothing too; I cannot think of anything else now, but I know there were a good many things; she put the money in her own pocket and saved it." One Julius Stauss (who had been appointed by the county court guardian of Herman Dierolff, plaintiff's husband, as an insane person—see 24 Wis. 394), testified that in March, 1868, plaintiff showed him a promissory note, dated in March, 1865, and signed by defendant substantially in this form: "One year from date, I promise to pay *Mrs. Dierolff* six hundred dollars, with seven per cent. interest." The defendant testified that he never borrowed any money of the plaintiff, and never executed any promissory note to her; that he had made advances of money to her; that in October, 1865, he took from her, as security for such advances, a mortgage of the house in which she was living (the same being situate upon leased premises, and being the property of Mr. Dierolff, who was then insane, and confined at the state hospital for the insane at Madison); that in October, 1866, he had the mortgage foreclosed, and bought the house at the foreclosure sale; that about a month afterwards he executed and delivered to the plaintiff an instrument in about these words: "I promise to allow *Henrietta Dierolff* the sum of $600 for the house, to be settled in one year;" that in May, 1868, one Mrs. Rentz brought to him said instrument and thirty dollars which he had advanced to plaintiff thereon; that Mrs. Rentz then stated that plaintiff had requested her to tell defendant that she (plaintiff) had lost said instrument; that defendant then returned the instrument and money to Mrs. Rentz, and desired her to deliver it again to

the plaintiff, as it was hers; and that he had never seen it since that time.    Mrs. Rentz, for the defendant, testified that in April, 1868, she saw in plaintiff's possession a paper which plaintiff said was given her by defendant; that plaintiff told her "it was for the house—that he (defendant) had agreed for $600;" that afterwards plaintiff left with her that paper and a pocket book with thirty dollars in it, and requested witness to keep them, saying that "she (plaintiff) would tell *Winterfield* (defendant) that she had lost it," and that witness should say so too, adding that the object was "to get some more money, and to get another paper."    There was other evidence for the defense, tending to show that the plaintiff had had no money to loan, but had received advances of money from the defendant; and that she stated to a witness, sometime before the trial, that she did not receive any money in Chicago from the contributions made at the time of her first husband's death, a man by the name of Hesse, who had collected it, not having given it to her.    There was also evidence tending to impeach the testimony of Elizabeth Beeler and Stauss, and to show that plaintiff and Stauss had endeavored to suborn two other witnesses to commit perjury in this cause.    There was rebutting testimony by plaintiff and Stauss.

The jury found for the plaintiff on the first and third causes of action, assessing the damages at $1,131.92.    The defendant moved for a new trial, on the ground, among others, of newly discovered evidence, the nature of which will sufficiently appear from the opinion.    At the hearing of the motion, plaintiff introduced evidence to show that Leonhard Hesse (mentioned in the opinion) had been convicted in Milwaukee, in 1861, of petty larceny.    The court refused a new trial; and defendant appealed.

*E. Fox Cook*, for appellant.

*Mason G. Smith* and *H. C. Runkel*, for respondent.

Cole, J.   We are inclined to think that a new trial should have been granted in this case, on the ground of newly discovered evidence. The plaintiff, in her testimony, when asked how she obtained the money which she said she loaned the defendant, stated that friends in Chicago collected about $660 in contributions for her, when her husband fell into the lake at that city, and was drowned. The affidavits of Leonhard Hesse, Wilhelmina Hesse and Richard Lotholz, were used in support of the motion for a new trial. These persons state in their affidavits that they were living in Chicago at the time the plaintiff's husband was drowned; knew them well, and were acquainted with their pecuniary condition. L. Hesse says that he went at plaintiff's request, and in her company, to obtain contributions from the residents of Chicago, and that between fifty and sixty dollars, in all, were collected by them, which amount was divided between them; and that he positively knows that nobody besides himself raised any money or means for her; and that she was entirely destitute of means except the one-half of the money thus collected. W. Hesse states in her affidavit that her husband went with the plaintiff to make collections from the citizens of Chicago, and that they succeeded in obtaining, by contributions, in all a sum not exceeding fifty dollars. Lotholz states that he advised the plaintiff, after the burial of her husband, to get a subscription to aid her by contributions for immediate necessities; that thereupon a subscription was drawn; that he and his partner contributed two dollars; knows that the subscription was circulated by plaintiff and Hesse, and that about fifty dollars were raised thereon; and that she received no contribution from any other source.

This evidence was not discovered until after verdict. It seems to us that it is not merely cumulative to the evidence introduced on the trial, as the plaintiff's counsel contends; nor is it purely impeaching the tes-

timony given by the plaintiff. The newly discovered evidence rather relates to new and material facts, and is strictly original evidence. It shows, by parties who aided her in raising contributions, the amount the plaintiff obtained by charity in Chicago when her husband was drowned. In our view the evidence is quite important, as bearing upon the defense, and is of a character distinct from any introduced on the trial. *Alger v. Merritt*, 16 Iowa, 122; *O'Barr v. Alexander*, 37 Georgia, 195; *Grubb v. Kalb*, id. 459. There are some peculiar features about the case, and a new trial may subserve the cause of justice. It would probably be improper for us to add more at this time, since we have concluded to send the case back for a new trial.

The judgment of the circuit court is reversed, and a new trial awarded.

The respondent moved for a rehearing, but no argument in support of the motion was filed within the time allowed by the rule. The appellant then moved to dismiss the motion for a rehearing.

COLE, J. The rule in regard to rehearing provides that if the arguments in support of the motion are not served and submitted to the court within twenty days after filing the motion, the motion shall be deemed waived. 21 Wis., Appendix B. In this case, the motion for a rehearing, by this rule, failed for want of prosecution. The motion, therefore, to dismiss the motion for a rehearing, was unnecessary. It is for this reason that the present motion is denied.

*By the Court.*—Motion to dismiss denied.